## ADP CREDIT CORPORATION, Appellant,

v.

**John SHARP, Comptroller of Public Accounts of the State of Texas; Martha Whitehead, Treasurer of the State of Texas; and Dan Morales, Attorney General of the State of Texas, Appellees.**

No. 03–95–00508–CV.

Court of Appeals of Texas, Austin.

April 24, 1996.

Rehearing Overruled May 29, 1996.

491

John F. Williams, Clark, Thomas & Winters, Austin, for Appellant.

Dan Morales, Attorney General, Jean L. Ricciardello, Assistant Attorney General, Taxation Division, Austin, for Appellee.

Before CARROLL, C.J., and ABOUSSIE and KIDD, JJ.

ABOUSSIE, Justice.

This case presents the issue whether appellant "separately identified" the interest component on its lease financing contracts. Appellant ADP Credit Corporation ("ADP") brought suit against appellees John Sharp as Comptroller of Public Accounts of the State of Texas; Martha Whitehead, as Treasurer of the State of Texas; and Dan Morales, as Attorney General of the State of Texas (collectively, the "Comptroller"), seeking to recover Texas sales tax paid under protest and to obtain a declaration that it "separately identified" the interest component of its lease financing contracts. The trial court granted judgment in favor of the Comptroller. We will affirm the trial court's judgment.

## BACKGROUND

ADP is a corporation which leases business equipment pursuant to a capital lease/seller financing plan. The typical ADP lease treats the equipment as an asset of the customer for accounting purposes with a value equal to the "acquisition cost" as stated in the lease. The customer makes monthly payments which, in sum, exceed the acquisition cost. The customer has an option to purchase the equipment for a nominal value at the end of the lease term. The lease individually identifies: (1) the acquisition cost of the equipment; (2) the sales tax on the acquisition cost; (3) the monthly lease payment; (4) the number of months of the lease term; and (5) the purchase price at the end of the lease. The lease does not, however, contain an individual "line-item" for either the amount of interest paid or the interest rate.

Following a 1990 audit, the Comptroller concluded that ADP did not "separately identify" the interest component of its lease contracts and that therefore ADP failed to remit the proper amount of sales tax owed. Accordingly, the Comptroller assessed ADP with an additional $257,026.10 in sales tax. ADP paid the tax under protest and filed the instant suit to recover the tax. *See* Tex. Tax Code Ann. § 112.051 (West 1992). No jury having been demanded, the suit was tried before the court. At the close of ADP's case, the Comptroller moved for judgment which the trial court granted. ADP appeals the trial court's final judgment.

## DISCUSSION

■ According to the Texas Tax Code (the "Code"), the lease of tangible personal property is considered a "sale" subject to sales tax. *See* Tex.Tax Code Ann. §§ 151.005(2), 151.051(a) (West 1992). The tax is imposed on the "sales price" of the item leased. *Id.* § 151.051(b). Normally, the " 'sales price' means the total amount for which a taxable item is sold, leased, or rented. . . ." *Id.* § 151.007(a). However, the " 'sales price' . . . does not include any of the following if *separately identified* to the customer by means of an invoice, billing, sales slip or ticket, or contract: . . . finance, carrying and service charges, or *interest* from credit extended on sales of taxable items under a conditional sales contract or other contract providing for the deferred payment of the purchase price. . . ." *Id.* § 151.007(c)(4) (emphasis added).

Furthermore, Comptroller rule 3.294(d)(7) [1] provides, "Under a financing lease, charges for interest by the lessor to the lessee will be taxable unless the rate of interest or the actual interest charged is separately stated in a contract, invoice, billing, sales slip, or ticket to the customer." 34 Tex.Admin.Code § 3.294(d)(7) (West 1995). Therefore, in the instant cause, the entire amount of the lease payments would be subject to sales tax, *unless* ADP separately identified the interest component to its customers.

■ In its first two points of error, ADP contends that the trial court erred in finding that, according to § 151.007(c)(4) of the Code, ADP failed to identify separately to its customers the interest component of its lease contracts. Tex. Tax Code Ann.

1. Rule 3.294(e)(6) was the rule in effect at the time of the suit. However, the rule has since been recodified. 34 Tex.Admin.Code § 3.294(d)(7) (West 1995). For the sake of convenience, we cite to the current version.

§ 151.007(c)(4) (West 1992). Specifically, ADP argues that the customer is well aware that the amount of interest payments equals the amount of total payments under the lease less the equipment acquisition cost. ADP argues that, because all the relevant variables are identified on the face of the lease contract, by simple arithmetic the customer can calculate the amount of the interest payments. Therefore, ADP contends that it has "separately identified" the interest component, has complied with the statute, and is therefore entitled to recover the tax paid under protest.

The Comptroller responds that ADP's interpretation of § 151.007(c)(4) contravenes the plain meaning of the Code and that, in order to escape taxation, the interest component of the lease contracts must be listed independently. In the instant cause, according to the Comptroller, while the interest component might be separately identifi*able by* the customer upon calculation, it has not been *separately* identifi*ed to* the customer.

■■■ The primary duty of any court in construing a statute is to effectuate the intent of the legislature. *Seay v. Hall,* 677 S.W.2d 19, 25 (Tex.1984). The intent should be determined by examining the language used in the statute. *Jones v. Del Andersen & Assocs.,* 539 S.W.2d 348, 350 (Tex.1976); *Southwestern Bell Tel. Co. v. Public Util. Comm'n,* 863 S.W.2d 754, 757 (Tex.App.—Austin 1993, writ denied). The Code Construction Act provides that "[w]ords and phrases shall be read in context and construed according to rules of grammar and common usage." Tex.Gov't Code Ann. § 311.011(a) (West 1988). A statute should be read as if every word, phrase, and expression were deliberately chosen for a purpose. *University of Texas at Austin v. Joki,* 735 S.W.2d 505, 508 (Tex.App.—Austin 1987, writ denied). The legislature is presumed to have used words according to their ordinary meaning. *Connors v. Connors,* 796 S.W.2d 233, 237 (Tex.App.—Fort Worth 1990, writ denied). The statute should be construed as a whole rather than through an examination of isolated provisions. *Durish v. Channelview Bank,* 809 S.W.2d 273, 275 (Tex.App.—Austin 1991, writ denied). As long as the statute is unambiguous, "the courts must follow the clear language of the statute." *Hood v. State,* 828 S.W.2d 87, 93 (Tex.App.—Austin 1992, no writ); *Connors,* 796 S.W.2d at 237.

The statute requires that in order for interest payments to escape taxation, they must be *separately identified to the customer.* ADP's construction of the statute contemplates that the taxation depends on whether the interest component is *readily identifiable by the customer.* The lease contracts did not contain a separate "line-item" for either the amount of interest paid or the interest rate. Therefore, applying the plain meaning of the statute, we conclude that the trial court did not err in concluding that ADP failed to separately identify the interest components of the finance leases. We overrule appellant's first two points of error.

■■■ In point of error three, ADP also argues that, to the extent it relied on Comptroller rule 3.294(d)(7), the trial court erred in granting judgment denying any relief. We note that, according to the express terms of the trial court's final judgment, the court relied solely on the Code in reaching its conclusion, and not on the Comptroller's rule. Because the Comptroller's rule formed no basis for the judgment, we overrule point of error three. However, even if the judgment were construed to rely on the Comptroller's rule, we would overrule the point of error nonetheless.

■■■ In construing a statute, even one that is facially unambiguous, the courts may consider the administrative construction of the statute. Tex.Gov't Code Ann. § 311.023(6) (West 1988); *Quorum Sales, Inc. v. Sharp,* 910 S.W.2d 59, 62 (Tex.App.—Austin 1995, writ denied). This Court may give weight to the construction placed upon it by the agency charged with its administration as long as the construction is reasonable and does not contradict the plain language of the statute. *Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993); *Quorum Sales,* 910 S.W.2d at 62; *see also* Tex. Tax Code Ann. § 111.002(a) (West 1992) ("The comptroller may adopt rules that do not conflict with the laws of this state...").

Comptroller rule 3.294(d)(7) provides that in order to escape tax liability, the interest component of a finance lease must be "separately stated" to the customer. *See* 34 Tex.Admin.Code § 3.294(d)(7). In light of our conclusion that the statute requires the interest component to be separately identified to the customer, as opposed to being readily identifiable by the customer, we cannot say that the Comptroller's rule, as applicable to the instant cause, is unreasonable or contradicts the plain meaning of the statute.

## CONCLUSION

Having overruled all of appellant's points of error, we affirm the trial court's final judgment.